## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CANDACE H., | Case No.  1:20-CV-00447-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

Pending is Petitioner Candace H.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 26) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a fifty-four-year-old woman who alleges that she is unable to work due to a constellation of physical and mental problems, including fibromyalgia, chronic fatigue, depression, anxiety, rotator cuff disorder, chronic obstructive pulmonary disease (COPD), migraines, and pain in her back, hips, and joints.  AR[2] 22, 347.  Petitioner has applied for

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted as the respondent in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR" refer to the cited page of the Administrative Record (Dkt. 20).

**MEMORANDUM DECISION AND ORDER - 1**

disability benefits on three occasions. AR 19, 74, 141. Petitioner's first application, dated 2011, was denied without Petitioner exhausting her appeals. AR 74. Petitioner filed her second application on January 16, 2013, alleging a similar disability start date as the first unsuccessful application. *Id.* After this application was denied by an ALJ, but while it was still pending appeal to the Appeals Council, Petitioner returned to work. AR 108.

From roughly October 1, 2014 through December 31, 2015, Petitioner performed "substantial gainful activity" as a Licensed Practical Nurse ("LPN"). AR 108, 349, 364. On remand from the Appeals Council, an ALJ found that Petitioner was not disabled during this period because she was working and was not disabled before or after this period, because Petitioner retained the ability to perform a variety of light work.[3] AR 108-121. This decision was issued on April 27, 2016. AR 122.

On December 18, 2017, Petitioner filed the applications for social security disability income ("SSDI") and supplemental security income ("SSI") that form the basis of this appeal. AR 19. In these applications, Petitioner continued to allege disability due to fibromyalgia, migraines, mental health issues, and pain in her neck, back, and hands. *Compare* AR 22 and 347 *with* AR 108-109. Petitioner also alleged several new conditions, including COPD, a rotator cuff disorder, and hip pain. AR 20. Petitioner asserted a disability onset date of January 1, 2017, after she stopped working. AR 19, 22.

As with her previous claims, Petitioner's current claim was denied initially and on reconsideration. AR 19. Petitioner requested a hearing in front of an Administrative Law Judge

---

[3] In reaching this conclusion, the ALJ found that Petitioner's complaints of pain and dysfunction in her hands, neck, and back were not fully credible. The ALJ discounted Petitioner's subjective complaints because they were inconsistent with the leisure activities Petitioner had reported to her doctors, for example, hiking, going to the park, and swimming. AR 117.

**MEMORANDUM DECISION AND ORDER - 2**

("ALJ").  *Id.*  On December 17, 2019, the claim went to a hearing before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons.  *Id.*  On January 16, 2020, the ALJ issued a decision that was unfavorable to Petitioner.  AR 16-32.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-6.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises three points of error.  First, Petitioner contends that the ALJ failed to provide clear and convincing reasons for discrediting her subjective symptom testimony.  Pt.'s Br. at 7-12 (Dkt. 26).  Second, Petitioner maintains that the ALJ improperly failed to consider the statement of her daughter.  *Id.* at 12-13.  Finally, Petitioner argues that the ALJ failed to elicit reasonable explanations for alleged conflicts between the vocational expert's testimony and the job descriptions in the Dictionary of Occupational Titles (the "DOT").  *Id.* at 13-18.

## <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

**MEMORANDUM DECISION AND ORDER - 3**

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error.  *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 4**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: COPD, right rotator cuff disorder, sacroiliac/mild lumbar degenerative disc disease, fibromyalgia, chronic fatigue, mild bilateral hip degenerative joint disorder/impingement, migraine headaches, heart murmur with moderate left ventricle wall thickness, major depressive disorder, and panic

**MEMORANDUM DECISION AND ORDER - 6**

disorder.  AR 22.  The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner can only "do occasional forceful gripping and twisting," is limited to walking or standing for four hours in an eight-hour day, and would need to alternate positions from sitting to standing or walking approximately every 30 minutes.  AR 24.  The ALJ also determined that Petitioner's impairments limit her to "low stress work that is defined as no fast paced assembly work, and occasional changes in the work setting."  *Id.*  Based on the testimony of a vocational expert, the ALJ concluded that these limitations would prevent Petitioner from returning to her past work as a nurse.  AR 30.  The ALJ found, however, that Petitioner's limitations would not prevent her from performing an alternative range of light work, including working as an electronics worker, a bench assembler, and an office helper.  AR 31.  The ALJ, therefore, found that Petitioner was not disabled.  AR 32.

## DISCUSSION

I.  Petitioner's Symptom Testimony

Petitioner's first claim of error on appeal relates to the ALJ's rejection of her symptom testimony.  Pt.'s Br. at 7-12 (Dkt. 26).  Throughout this case, Petitioner has asserted that her joint pain, fatigue, and migraines are so extreme that she can hardly engage in any physical activity. In her function report, Petitioner wrote that she does "a lot of nothing," because "every activity [she] tr[ies] to do briefly[,] wears [her] out and causes pain."  AR 373.  Petitioner further reported that her pain medications only help her "get up and move for an hour or two," and that once the pain starts, she has to "stop for the rest of the day – there is no 10-15 [minute] break and resume."  AR 372.  Petitioner claimed her fatigue has similar impacts, "only allow[ing] for short brief activity before [she is] down in bed."  *Id.*  As a result of these limitations, Petitioner stated

**MEMORANDUM DECISION AND ORDER - 7**

she "can't keep up with anything" and can only concentrate and stay on task for short periods of approximately 30 minutes.  AR 372-373.

Petitioner's testimony was comparably dire.  At the disability hearing, Petitioner averred that the "most significant thing" preventing her from working was fatigue accompanied by daily pain.  AR 44-45.  Petitioner explained that these conditions cause her to "frequently" drop things and prevent her from picking up anything heavy.  AR 48, 50.  In addition, Petitioner indicated the fatigue is so bad that she can only do things for 10 to 15 minutes at a time before needing to stop and rest.  AR 54-55.  Petitioner noted that her family assists her with household chores, such as dishes and vacuuming, because Petitioner's ability to complete these tasks has "gotten worse" every year.  AR 58-59; *see also* AR 374 (reporting that Petitioner needs help with house and yardwork).

When evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id.*

Generalized findings will not satisfy this standard.  The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ."  *Brown-Hunter v. Colvin*, 806 F.3d 487,

**MEMORANDUM DECISION AND ORDER - 8**

493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

The ALJ's five-page comparison of the medical record to Petitioner's allegations more than satisfied these standards.  AR 25-30.  Within this discussion, the ALJ provided numerous, valid reasons for discrediting Petitioner's claims of near total disability.

a. *Petitioner's Reported Activities*

The primary reason the ALJ provided for rejecting Petitioner's testimony was that the extensive limitations Petitioner claimed to experience due to pain and fatigue did not align with how Petitioner described her activities to her medical providers.  *Id.*  To support this conclusion, the ALJ provided the following examples:

- In February 2017, Petitioner told her doctor she could complete activities of daily living "without assistance."  AR 26 (referencing AR 589).  The ALJ found that this record conflicted with Petitioner's claim to need help from family with chores and housework.  AR 29-30.

- In May 2017, Petitioner told her doctor she wanted to do some camping that year.  AR 27 (referencing AR 582).

- After trying yoga at her doctor's encouragement, in November 2017, Petitioner told her doctor she was stopping yoga because it was "boring."  AR 566 and 568 (referenced at AR 27).  The ALJ stressed that Petitioner's inability to do yoga was not medical in nature.  AR 27.

- In January 2018, Petitioner told her doctor she tried shoveling snow and it hurt her hips.  AR 27 (referencing AR 562).

**MEMORANDUM DECISION AND ORDER - 9**

- In March 2018, Petitioner's doctor documented that Petitioner was "struggling with some things they are doing at home with some extreme physical activity removing a very large tree stump. It has been physically very difficult for her. They are trying to get the job done but it is taking a very long time. Otherwise her symptoms are rather stable." AR 674 (referenced at AR 27).

- In June 2018, Petitioner saw a family nurse practitioner for fatigue. AR 685. Petitioner told this provider that she will have "busy days" and then be "down" for a few days. AR 28 (referencing AR 685).

- Finally, in January 2019, Petitioner's doctor wrote that Petitioner was having more shoulder pain because "she has been lifting her grandson quite a bit. This [has] been causing tenderness in her shoulder. No new injury. No new weakness. Her back pain is also stable. Pain medications continue to improve her activity and quality of life." AR 739 (reference at AR 28).

The ALJ reasonably concluded that these examples showed Petitioner had a greater ability to function and is more active than she alleged. AR 27-28.

This was a "clear and convincing" reason to discount Petitioner's testimony. *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (Even where [a claimant's reported] activities

**MEMORANDUM DECISION AND ORDER - 10**

suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Petitioner's arguments to the contrary ask that the Court elevate Petitioner's preferred interpretation of her activities over the ALJ's reasoned decision.  For example, Petitioner attempts to minimize her involvement in the stump removal through argument and through reliance on her own testimony.  Pt.'s Br. at 10 (Dkt. 26).  At the disability hearing, Petitioner's counsel asked Petitioner about the stump removal as documented in the medical record.  AR 57. Petitioner testified that her son and his wife cut down the tree and ground the stump, while she "watched, but . . . did not do it."  AR 57-58.  In other words, Petitioner claimed that she did not run equipment, take the trunk out, or physically engage with the stump removal.  *Id.*

Petitioner asks the Court to credit this in-hearing description of the stump removal over the ALJ's reasonable reading of the medical record.  Pt.'s Br. at 10 (Dkt. 26).  But this begs the question of her own credibility.  Here, the ALJ was faced with two incongruous statements: (i) Petitioner's statement to her doctor that the stump removal had been "physically very difficult" for her and (ii) her in-hearing claim to not to have physically participated in the stump removal. The ALJ acted well within reason in concluding these statements conflicted and that the medical record indicated that Petitioner had physically participated in the stump removal.  The ALJ, who personally observed the hearing testimony first-hand, was not required to credit Petitioner's self-serving attempts to explain this conflict away.  *See Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005) (where the ALJ's interpretation of a claimant's activities is rational, that decision must be upheld even if the evidence of the claimant's reported activities "may also admit of an interoperation more favorable" to the claimant); *see also Molina v. Astrue*, 674 F.3d 1104, 1120-1121 (9th Cir. 2012) (agreeing that "it is the ALJ's prerogative to determine the credibility

**MEMORANDUM DECISION AND ORDER - 11**

of witnesses" and reasoning that "the administrative judge is generally in a unique position to observe the witnesses' demeanor and conduct firsthand"); *see also Hernandez v. Chater*, 87 F.3d 1319 (Table), 1996 WL 341951, at *1 (9th Cir. 1996) (unpublished) ("[T]he ALJ, having observed the witnesses, is in a far better position to weigh the evidence than an appellate court reviewing a cold transcript of the testimony").

Petitioner's arguments about her care for her grandson suffer similar flaws.  The ALJ reasonably relied on a medical record indicating Petitioner was lifting her grandson "quite a bit" over Petitioner's later testimony her grandson crawls onto the bed so she can change his diaper, and she only lifts him onto her lap.  *Compare* AR 739 *with* AR 56-57.

In short, the ALJ reasonably construed Petitioner's statements to medical providers as inconsistent with Petitioner's claim to only engage in physical activity for short, brief periods before being completely expended by pain and fatigue.

   *b.  The Minimal and Conflicting Medical Findings*

To bolster the adverse credibility findings, ALJ cited to various conflicts with the medical records and to the "minimal objective" medical findings.  AR 25-30.  These were also valid justifications for the ALJ's decision.

First, it is well-settled "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r of Social Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Here, the ALJ highlighted several conflicts between Petitioner's allegations and the medical evidence.  To take one, Petitioner reported that she could not concentrate or stay on task for more than 30 minutes at a time on average.  AR 372; *see also* AR 377 (explaining that she can pay attention for "next to nothing" on bad days and up to 1-2 hours on good days) and AR 53 (describing her problems with thinking, making decisions, and staying

**MEMORANDUM DECISION AND ORDER - 12**

on task).  As the ALJ noted, however, the consulting psychologist who evaluated Petitioner for

45 minutes in March 2018 found that Petitioner could "pay attention, remember, and follow

directions."  AR 662, 665 (reference at AR 29).  The ALJ also cited several mental status

evaluations from Petitioner's own medical providers indicating that she had normal mental

acuity and normal attention span and concentration.  AR 28-29 (citing AR 564, 725, 773).

Another conflict the ALJ identified was that Petitioner consistently displayed a normal

gait at her doctor's offices despite claiming to have knee pain that caused her knees "lock up"

and give out.  AR 26 (referencing AR 55-56 and AR 590).  Finally, the ALJ highlighted that at

least one of Petitioner's medical providers believed Petitioner's fatigue was related to behavioral

health and that she would benefit from depression treatment and exercise.  AR 28 (referencing

AR 685).  This record undercuts Petitioner's claim that fatigue prevents her from engaging in

almost any physical activity for more than a very brief period.

Second, the ALJ repeatedly noted that there were limited diagnostic examinations of

Petitioner's complaints and that the examinations that did exist, such as the imaging of

Petitioner's hips, had minimal findings.  AR 26-29.  Contrary to Petitioner's suggestion, this was

not an illegitimate factor for the ALJ to consider.  *See* Pt.'s Br. at 9 (Dkt. 26).  An ALJ may rely

on a lack of corroborative medical evidence to discount a claimant's subjective allegations so

long as it is not the *sole* basis for doing so.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)

(an ALJ may consider a lack of corroborating medical evidence as one factor in the credibility

determination); *Hazelton v. Saul*, 812 F. App'x 453 (9th Cir. 2020) (unpublished) (same).  That

is exactly what the ALJ did here.  To justify discrediting Petitioner's testimony, the ALJ pointed

to affirmative evidence showing that Petitioner's functioning was better than alleged – such as

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner's activities, mental status evaluations, and physical evaluations – as well as relying on

the absence of other medical evidence to support Petitioner's claims.  AR 25-30.

c.   *The Conservative Treatment of Petitioner's Conditions*

The final reason the ALJ provided for doubting Petitioner's credibility was the

conservative medical treatment she had received for her pain and fatigue.  AR 29.  For example,

the ALJ noted that "a sizeable portion" of the medical records related to the period prior to

Petitioner's disability onset date and that the newer records included several reports with largely

"carry-forward" information related to ongoing medication management.  AR 26.  Petitioner

contends that this was an invalid reason to reject her testimony, because the fact that a condition

is stable does not show that a claimant can work.  Pt.'s Br. at 9 (Dkt. 26).  This is generally true,

but overlooks the unique procedural posture of the case.  Here, Petitioner filed a previous claim

for disability benefits and was found not to be disabled as of April 27, 2016.  AR 122.  To the

extent her condition remained stable after this point and did not require elevated treatment, that

was a reasonable reason to discount Petitioner's testimony.

Even if the Court were to disregard the prior adverse disability determinations, the ALJ's

decision would stand.  In addition to pointing to minimal *amount* of new information, the ALJ

also found that the *content* of the new records indicated that Petitioner was pursuing and

receiving less intensive treatment than one might expect given her complaints.  Specifically, the

ALJ stressed that Petitioner "discontinued" yoga – a treatment suggested by her doctor – because

it was boring.  AR 26-27.  The ALJ also noted that despite reporting dyspnea – labored breathing

– upon exertion, Petitioner was only using her inhaler three times a week and had stopped taking

her other breathing medications because she did not like them.  AR 27 (referencing AR 291).

Finally, the ALJ pointed out that Petitioner never received diagnostic studies of her shoulder or

**MEMORANDUM DECISION AND ORDER - 14**

back.  AR 30.  The Court need not determine whether these were clear and convincing reasons,

standing alone, for rejecting Petitioner's testimony.  These were legitimate factors for the ALJ to

consider as part of a wholistic assessment of Petitioner's credibility.  *See Tommasetti*, 533 F.3d

at 1039 (holding that an ALJ did not err in rejecting a claimant's reports of "all-disabling pain

"in light of the fact that he did not seek an aggressive treatment program and did not seek an

alternative or more-tailored treatment program after he stopped taking an effective medication

due to mild side effects"); *see also* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 , at

* 9 (October 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is

not comparable with the degree of the individual's subjective complaints . . . , we may find the

alleged intensity and persistence of an individual's symptoms are inconsistent with the overall

evidence of record.").

Taken together the ALJ provided sufficiently, clear, particularized, and convincing

reasons to rebuff Petitioner's claim of completely debilitating pain and fatigue.

II.  The Statement of Petitioner's Daughter

Petitioner's second challenge on appeal is that the ALJ failed to discuss or make any

reference to the lay statement of her daughter.  Pt.'s Br. at 12-13 (Dkt. 26).  This was an error.

Testimony from a claimant's family members regarding a claimant's symptoms or how an

impairment affects the claimant's ability to work "is competent evidence that the ALJ must take

into account."  *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).  Before rejecting such

testimony, the ALJ must provide germane reasons to the witness.  *Id.*  The ALJ failed to make

any such findings.

The Court does not agree with Petitioner, however, that this error was harmful.  In the

social security context, reversal on account of error is not "automatic," but requires a "case-

**MEMORANDUM DECISION AND ORDER - 15**

specific" determination of prejudice. *Ludwig*, 681 F.3d at 1053. It is the Petitioner's burden to make this showing. *Id.*; *McLeod v. Astrue*, 640 F.3d 887 (9th Cir. 2011).

Petitioner has not satisfied, and cannot satisfy, that burden. Petitioner argues that the ALJ's disregard of her daughter's statement is prejudicial because the daughter's statement "lends credence to Petitioner's" testimony and to a finding of disability. Pt.'s Br. at 13 (Dkt.26). To support this position, Petitioner cites *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Ninth Circuit, however, has explicitly rejected Petitioner's understanding of *Stout* as inconsistent with the Supreme Court's subsequent decision in *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). *Molina*, 674 F.3d at 1117. When an ALJ fails to discuss lay witness testimony, it is not enough for a claimant to show that this testimony accords with the allegations of disability. *Id.* Petitioner must show a "substantial likelihood" that failure to discuss the lay testimony had an impact on the outcome of the case. *Ludwi*g, 681 F.3d at 1053; *see also Molina*, 674 F.3d at 1118-1119 (finding no prejudice where the petitioner did not suggest any basis for concluding the error was "likely to affect" the disability determination); *McLeod*, 640 F.3d at 888 (warning that the "mere" possibility of prejudice to the claimant is not enough to warrant a remand).

The Ninth Circuit has held that such prejudice does not exist where a lay witness provides cumulative testimony that does not describe "any limitations beyond those" those already validly rejected by the ALJ in discussing the claimant's testimony. *Molina*, 674 F.3d at 1122. That is exactly the case here. The ALJ provided a lengthy and well-supported list of reasons for rejecting Petitioner's subjective symptom testimony. AR 25-30. This analysis applies equally to the statement of Petitioner's daughter.

**MEMORANDUM DECISION AND ORDER - 16**

III. <u>The Testimony of the Vocational Expert</u>

Petitioner's final challenge on appeal is that the ALJ failed to reconcile two conflicts between the testimony of the vocational expert (the "VE") and the DOT.  AR 14-17 (Dkt. 26). Neither argument is persuasive.

*a.   The Sit/Stand Limitations*

"To determine the physical exertion requirements of work in the national economy," the Social Security Administration and the DOT classify all jobs as sedentary, light, medium, heavy, or very heavy.  20 C.F.R. § 404.1567.  Relevant here, sedentary work requires occasional walking and standing, while light work requires "a good deal of walking or standing, or when it involves sitting most of the time . . . some pushing and pulling of arm or leg controls."  *Id.*  In 1983, the Social Security Administration issued a ruling elaborating on these definitions.  This ruling states that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Social Security Ruling ("SSR") 83-10, 1993 WL 31251, at *5 (January 1, 1983).  By comparison, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  *Id.* at *6.

As Petitioner points out, the ALJ found that her ability to walk fell within these two ranges.  Specifically, the ALJ found that Petitioner would need to sit for four hours a day and walk or stand for the remaining four hours a day, with the ability to change positions every 30 minutes.  AR 24.  The ALJ described this as one of several limitations on Petitioner's ability to perform the full range of light work.  *Id.*

**MEMORANDUM DECISION AND ORDER - 17**

There was nothing suspect or erroneous about this RFC.  The Social Security regulations do not require that a claimant be able to perform the full range of work within any one exertional category, each of which includes multiple occupations representing numerous jobs in the national economy.  SSR 83-12, 1983 WL 31253 (January 1, 1983).  Where, as here, a claimant falls between exertional categories, the regulations advise the ALJ to use a VE to determine the impact the reduced exertional capacity has on the occupational base.  *Id.* at *2.  The ALJ followed this prescription.

At the December 17, 2019 disability hearing, the ALJ called an impartial VE named Mark J. Schwager to assist the ALJ in determining what jobs were available to someone with Petitioner's limitations.  The VE testified that a person, like Petitioner, who could only walk or stand for four hours a day and needed to alternate positions regularly would be precluded from certain light jobs, such as working as a ticket taker or a cashier.  AR 65-66.  The VE professed, however, that this would not disqualify Petitioner from other light jobs, such as working as an office helper, an electronics worker, or a bench assembler.  *Id.*  The ALJ acknowledged that these sit/stand variables were not reflected "in the DOT or its companion publications."  AR 70.  The ALJ explained that his testimony about what light jobs allowed for Petitioner's postural limitations was based on his "30 years' experience analyzing jobs and working with employers." *Id.*  Petitioner has not shown that it was unreasonable for the ALJ to credit this testimony.

While the DOT raises a presumption as to job classification requirements, this presumption is rebuttable.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may rely on VE testimony that conflicts with the DOT so long as there is "persuasive" testimony to support the deviation.  *Id.*  This is not a demanding standard.  "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."  SSR 00-4p, 2000 WL 1898704, at *2

**MEMORANDUM DECISION AND ORDER - 18**

(December 4, 2000).  Instead, it is the responsibility of the ALJ to resolve the conflict by asking the expert to explain the variance and then determining "whether the [VE's] explanation for the conflict is reasonable."  *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

Assuming for the purposes of this decision that the VE's testimony about the job requirements of an office helper, an electronics worker, and a bench assembler conflicted with the DOT,[4] the VE provided a reasonable explanation for this conflict: the lack of particularized information in the DOT compared to the VE's more granular expertise.  AR 70.

The Ninth Circuit has considered the reliability of such testimony in at least three unpublished decisions – *Coleman v. Astrue*, 423 F. App'x 754 (9th Cir. 2011) (unpublished), *Buckner-Larkin v. Astrue*, 450 F. App'x 626 (9th Cir. 2011) (unpublished), and *Avilez v. Berryhill*, 677 F. App'x 373, 374 (9th Cir. 2017) (unpublished).  In *Coleman*, the Ninth Circuit called the VE's testimony about sit, stand, and walk options "uninformed guesswork" and found that the testimony was too "indefinite" and "speculative" to be reliable.  *Coleman*, 423 F. App'x at 756.  In *Buckner-Larkin* and *Avilez*, by contrast, the Ninth Circuit found that the ALJ reasonably credited the VE's testimony about sitting and standing requirements that were not accounted for in the DOT's broad exertional classifications.  *Buckner-Larkin*, 450 F. App'x at 628 (accepting the VE's testimony that certain sedentary jobs allow for an at-will sit/stand option) and *Avilez*, 677 F. App'x at 374 (affirming an ALJ's reliance on vocational testimony about what jobs a petitioner could do when the petitioner's RFC fell between the categories of

---

[4] District courts within the Ninth Circuit have split as to whether testimony about sit/stand options – something which the DOT does not explicitly address – conflict with the DOT.  *See King v. Colvin*, No. 4:14-CV-00333-REB, 2016 WL 1255592, at *5 (D. Idaho Mar. 28, 2016); *see also Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) (unpublished) (finding the VE's testimony did not conflict with the DOT because the DOT was "silent on whether the jobs in question allow for a sit/stand option").

**MEMORANDUM DECISION AND ORDER - 19**

light and sedentary work).  In these cases, the Ninth Circuit found that each VE's testimony was

reliably based on the expert's general experience, knowledge, and research.  *Buckner-Larkin*,

450 F. App'x at 628 (expert testimony based on "labor market surveys, experience, and

research") and *Avilez*, 677 F. App'x at 374 (expert testimony based on "twenty years of

experience, knowledge of characteristics, and requirements of jobs in the local area").

The Court finds *Buckner-Larkin* and *Avilez* more persuasive and more analogous to the

facts of this case than *Coleman*.  In *Coleman*, the VE failed to acknowledge the potential conflict

with the DOT and did not identify an alternative basis for his testimony.  *Coleman*, 423 F. App'x

at 756.  Here, by contrast, the VE recognized that his testimony supplemented and refined the

postural information included in the DOT.  AR 70.  The VE provided definite and clear

testimony about which light jobs would permit reduced walking and standing and which would

not.  AR 65-66.  Like in *Buckner-Larkin* and *Avilez*, the VE explained that this testimony was

based on his own research, analyzing jobs, and his many years of experience with real-world

employers.  AR 70.

Insofar as *Coleman* or the district court cases identified by Petitioner, counsel in favor of

a different result, the Court finds them unpersuasive.  Requiring the ALJ to conduct a more

exacting dissection of a VE's data, experience, inferences, and reasoning before crediting a VE's

uncontradicted testimony about specific job requirements, as Petitioner requests, would subvert

the substantial evidence standard and conflict with recent Supreme Court precedent.

When a claimant raises a challenge to the reliability of a VE's testimony, the Supreme

Court and the Ninth Circuit have warned that the "threshold" for "evidentiary sufficiency is not

high."  *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (citing *Biestek v. Berryhill*, 139 S. Ct.

1148, 1154 (2019)).  Applying this standard, the Supreme Court held that a VE's refusal to

**MEMORANDUM DECISION AND ORDER - 20**

provide the data underlying his testimony does not render the testimony per se unreliable.  *Id.*
This is because a VE's qualifications, cogent testimony, and recognized expertise generally
suffice to "handily" clear the substantial evidence bar.  *Id.*; *see also Bayliss v. Barnhart*, 427
F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary
foundation for his or her testimony. Thus, no additional foundation is required.").  The existence
of a conflict between an expert's testimony and the DOT does not throw these principles out the
window.

The DOT refers to occupations, not to specific jobs. "'Occupation' is a broad term that
includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the
jobs as 'generally performed.'"  *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).
Consequently, the fact that a VE's description of a particular job "does not align perfectly with
the DOT's listed occupation titles" does not automatically cast doubt on the VE's opinion.
*Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009).  Consistent with this fact, the
Ninth Circuit has frequently permitted ALJs to rely on a VE's professional experience to justify
a deviation from the DOT.  *See, e.g.*, *Avilez*, 677 F. App'x at 374; *Hunter v. Astrue*, 254 F.
App'x 604, 606 (9th Cir. 2007) (unpublished) (where the DOT classified a security guard as a
semi-skilled position, the ALJ "properly relied on the VE's testimony that in his experience, not
all security guard jobs required extensive writing skills"); *Gump v. Comm'r*, 222 F. App'x 553,
555 (9th Cir. 2007) (unpublished) (finding the VE's testimony about how the local economy
differed from the DOT persuasive, where the testimony was based on the expert's "experience
and knowledge").

In this case, it is a matter of common sense that not all jobs require either exactly six
hours of walking or six hours of sitting and nothing in between.  In determining what jobs fall

**MEMORANDUM DECISION AND ORDER - 21**

within this intermediate range, it is reasonable for an ALJ to rely on the professional expertise of a VE. *See Biestek*, 139 S. Ct. at 1152-53 (when offering expert testimony, a VE may invoke not only publicly available sources but also "information obtained directly from employers" and their own "experience in job placement or career counseling"); *see also Buckner-Larkin*, 450 F. App'x at 628 and *Avilez*, 677 F. App'x at 374.

  *b.* *Limitations on "Forceful" Gripping and Twisting*

  In crafting the RFC, the ALJ found that Petitioner can frequently handle and finger, but can only occasionally engage in "forceful gripping and twisting." AR 24. The VE testified that these restrictions would not prevent Petitioner from working as an electronics worker, a bench assembler, and an office helper. AR 64-66, 68. As above, the VE based this conclusion on his "30 years' experience analyzing jobs and working with employers." AR 70.

  Petitioner argues that this testimony is untrustworthy because the VE misunderstood the definition of handing. Pt.'s Br. at 17 (Dkt. 26). Specifically, Petitioner stresses that the definition of handling encompasses "all working motions of the hands," including both grasping and turning. *Id.* Petitioner claims, therefore, that it is impossible for someone to be able to frequently handle and finger, but only occasionally engage in gripping, grasping, or twisting. *Id.* This argument ignores the modifier "forceful." Here, the ALJ found that Petitioner could frequently engage in handling, but was limited in her ability to perform certain "*forceful*" types of handling. AR 24. This is not inherently inconsistent. There was, consequently, no "obvious or apparent" for the ALJ to resolve when assessing the reliability of the VE's testimony. *See Gutierrez*, 844 F.3d at 808 (for a difference between an expert's testimony and the DOT to require addressing, it must be "obvious or apparent"). To the extent there was a conflict, the ALJ reasonably resolved it by relying on the VE's experience and knowledge about specific job

**MEMORANDUM DECISION AND ORDER - 22**

requirements.  *See Avilez*, 677 F. App'x at 374; *Hunter*, 254 F. App'x at 606; *Buckner-Larkin*, 450 F. App'x at 628.

## <u>ORDER</u>

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 26) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**

DATED: May 23, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**